IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| STEPHEN A. JOHNSON, and<br>MAI JOHNSON, | § | NO. 7:15-CV-49-DAE |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| UNITED HEALTHCARE OF<br>TEXAS, INC., | § | |
| | § | |
| | § | |
| Defendant. | § | |
| _____ | § | |

ORDER: (1) GRANTING IN PART AND DENYING IN PART MOTION FOR
SUMMARY JUDGMENT; and (2) DENYING MOTION TO EXCLUDE

        The matters before the Court are (1) Defendant United Healthcare of

Texas, Inc.'s ("Defendant" or "United Health") Motion for Summary Judgment

(Dkt. # 15); and (2) Plaintiffs Stephen A. Johnson and Mai Johnson's ("Plaintiffs")

Motion to Exclude Defendant's Reply (Dkt. # 18).  On March 7, 2016, the Court

held a hearing on the motions.  At the hearing, Alton Todd, Esq., and Jeffrey Todd,

Esq., represented Plaintiffs, and Andrew Jubinsky, Esq., and Timothy Daniels,

Esq., represented United Health.

        After careful consideration of the memoranda in support of and in

opposition to the motions, and in light of the parties' arguments at the hearing, the

Court, for the reasons that follow, **GRANTS IN PART** and **DENIES IN PART**

United Health's Motion for Summary Judgment (Dkt. # 15) and **DENIES**

Plaintiffs' Motion to Exclude (Dkt. # 18).

BACKGROUND

   United Health issued group medical insurance to Johnny Johnson

Insurance Agency, LLC ("the Employer"), under group policy number

GA3M2450BW ("the Group Policy").  (Dkt. # 14-1 at 4.)  Under the Group Policy,

certificates of coverage ("Certificates") were issued to eligible employees and their

dependents.  (Id.)  The effective date of coverage for the Group Policy was July 1,

2011.  (Dkt. # 15-1 at 8.)  Plaintiff Stephen A. Johnson, an eligible employee of the

Employer, was the primary insured on his Certificate and his wife, Plaintiff Mai

Johnson, was a dependent on the Certificate.  (Id. at 3.)

   On March 20, 2011, prior to the effective date of the Group Policy,

Mrs. Johnson suffered a fall at her residence, resulting in a closed-head injury.

According to Plaintiffs, on the same day, she underwent two craniotomies.  (Dkt.

# 8 at 3–4.)  Since that time, and as a result of her injury, Plaintiffs contend that

Mrs. Johnson has been continuously and "actively engaged in long term post-acute

care, skilled nursing care, rehabilitative therapy and institutional and home-based

convalescence, in order to recuperate to the extent reasonably probable."  (Id. at 4.)

   On July 1, 2011, the effective date of the Group Policy, United Health

assumed health insurance coverage for Mrs. Johnson.  (Dkt. # 15-1 at 3.)  At that

2

time, Plaintiffs assert that Mrs. Johnson was an inpatient at a hospital, undergoing extensive rehabilitative therapy.  (Dkt. # 8 at 4.)  Plaintiffs contend, however, that in September 2011, United Health and its employees knowingly and willfully refused to pay further medical treatment for Mrs. Johnson even though they submitted timely coverage claims.  (Id.)  According to Plaintiffs, Mrs. Johnson was forced to leave the hospital.  (Id.)

Plaintiffs further contend that for the rest of 2011, United Health refused to place Mrs. Johnson in appropriate care facilities and would not pay for any further treatment, despite the Group Policy's prohibition against asserting annual limits for "essential services."  (Dkt. # 16 at 3.)  Plaintiffs assert that Mrs. Johnson was forced to pay out-of-pocket for a private, uninsured care facility. Plaintiffs appealed the coverage decision.  (Dkt. # 14-1 at 13.)  Upon review, United Health upheld its prior decision to deny coverage on the basis that the service was not eligible for payment under the terms of the Certificate.  (Id. at 18.)

In January 2012, the beginning of a new policy year, Plaintiffs state that United Health agreed to pay for some of the costs of the new facility, but that its coverage would be limited because the facility was "out-of-network."  (Dkt. # 8 at 6.)  Additionally, according to Plaintiffs, United Health informed them that no care facility in Midland, Texas was "in-network."  (Id.)

3

As a result of United Health's refusal to pay adequate coverage for Mrs. Johnson's care, Plaintiffs contend that they were forced to have Mrs. Johnson come back to their house and be rehabilitated in that setting.  (Dkt. # 16 at 4.) Nevertheless, Plaintiffs assert that United Health has also refused coverage for any of the rehabilitative equipment they purchased, or the additional expenses they incurred to care for Mrs. Johnson at their home.  (Id.)

On April 9, 2015, Plaintiffs filed suit against United Health in the 441st District Court of Midland, Texas.[1]  (Dkt. # 1.)  United Health timely removed the action to this Court on the basis of federal question, 28 U.S.C. § 1331 and 28 U.S.C. § 1441.  (Id.)  Plaintiffs' amended complaint alleges state law causes of action against United Health for breach of insurance contract, violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act ("DTPA"), and also seeks benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132.  (Dkt. # 8.)

On October 21, 2015, United Health moved for summary judgment on all of Plaintiffs' claims.  (Dkt. # 15.)  Plaintiffs filed a response on November 3, 2015 (Dkt. # 16), and United Health filed a reply on November 10, 2015 (Dkt. # 17).  On November 12, 2015, Plaintiffs moved to exclude a supplemental index included with United Health's reply (Dkt. # 18); United Health filed a response in

---

[1] Mr. Johnson, the primary insured under the Certificate, has made no claim that he was personally denied benefits.  (Dkt. # 1.)

4

opposition on November 17, 2015 (Dkt. # 20).  These motions are addressed

below.

I.    Summary Judgment

A movant is entitled to summary judgment upon showing that "there

is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a); see also

Meadaa v. K.A.P. Enters., L.L.C., 756 F.3d 875, 880 (5th Cir. 2014).  A dispute is

only genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986).

The moving party bears the initial burden of demonstrating the

absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S.

317, 323 (1986).  If the moving party meets this burden, the nonmoving party must

come forward with specific facts that establish the existence of a genuine issue for

trial.  Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc., 738 F.3d 703,

706 (5th Cir. 2013) (quoting Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621

(5th Cir. 2000)).  "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no 'genuine issue for trial.'"

Hillman v. Loga, 697 F.3d 299, 302 (5th Cir. 2012) (quoting Matsushita Elec.

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

In deciding whether a fact issue has been created, the court must draw all reasonable inferences in favor of the nonmoving party, and it "may not make credibility determinations or weigh the evidence." Tiblier v. Dlabal, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

A.   State Law Claims

United Health asserts that Plaintiffs' state law claims for breach of contract and for violations of the Texas Insurance Code and the DTPA are preempted by ERISA. (Dkt. # 15 at 9.) As such, United Health argues that ERISA is the exclusive means of enforcing the terms of the Group Policy and that it is therefore entitled to summary judgment on Plaintiffs' state law claims. (Id. at 12.)

In response, Plaintiffs concede that their state law claims are governed by ERISA and therefore preempted. (Dkt. # 16 at 1.) Nevertheless, Plaintiffs argue that summary judgment should not be granted on these claims because they should be "merged" into their alternative claim for benefits under ERISA. (Dkt. # 15 at 1–2.) Plaintiffs argue that other federal courts, including this Court, have

allowed similar preempted state law claims to be converted into claims under ERISA, and thereby saving the claims from dismissal.  (Dkt. # 16 at 13–14.)

Plaintiff cites this Court's opinion in Kersh v. UnitedHealthcare Ins. Co., 946 F. Supp. 2d 621 (W.D. Tex. 2013).  In Kersh, the Court held that "a claim that is completely preempted by ERISA is not automatically subject to dismissal; it is subject to adjudication on its merits under the applicable provisions of ERISA." Id. at 630.  The facts in Kersh, however, are distinguishable from the facts in this case.  Unlike the plaintiffs in this case, the plaintiff in Kersh did not plead an alternative claim for benefits under ERISA.  See Kersh, 946 F. Supp. 2d at 627–28. Because the plaintiff had alleged no claim under ERISA, the Court in Kersh recognized the possibility that the state law claims could be treated as claims for benefits under ERISA.  Id. at 630.  By treating them as such, a plaintiff may possibly avoid a court's dismissal of the state law claims based on their ERISA preemption.  See id. at 630.  Here, because Plaintiffs specifically pled a claim for benefits under ERISA in their amended complaint, there is no need for the Court to "merge" or convert Plaintiffs' state law claims into their alternative claim for benefits under ERISA.  (Dkt. # 8.)

The Supreme Court has held that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive

7

and is therefore pre-empted." <u>Aetna Health, Inc. v. Davila</u>, 542 U.S. 200, 209

(2004).  Accordingly, because (1) Plaintiffs' state law claims are preempted by

ERISA, and (2) Plaintiffs have sufficiently pled an alternative claim for benefits

under ERISA, summary judgment is granted on Plaintiffs' state law claims.

   B.   <u>Claim for Benefits Under ERISA</u>

         United Health also moves for summary judgment on Plaintiffs' claim

for benefits under ERISA,[2] arguing that it did not abuse its discretion in applying

the terms of the Certificate.  (Dkt. # 15 at 12.)  Specifically, United Health argues

that it did not abuse its discretion in denying Plaintiffs' request for additional

benefits or in denying benefits for alternative treatment and comfort expenses.  (<u>Id.</u>

at 14.)

         When an ERISA plan gives the administrator discretionary authority

to construe the plan's terms and determine eligibility for benefits, the Court

---

[2] At oral argument on United Health's motion, Plaintiffs' counsel argued that he no
longer believed that Plaintiffs health coverage was provided pursuant to an ERISA
plan.  As the basis for his argument, Plaintiffs' counsel contended that Mr.
Johnson's employer did not pay the premium on behalf of Mrs. Johnson who was
covered as a dependent under the Certificate.  This contention is without merit.
The Employer Application form indicates that it would pay 99% of the premium
for each eligible employee and 0% for dependents of the eligible employee.  (Dkt.
# 14-1 at 4.)  In accordance with the ERISA statute, the Group Policy "satisfies the
primary elements of an ERISA 'benefit plan'—establishment or maintenance by an
employer intending to benefit employees."  <u>Meredith v. Time Ins. Co.</u>, 980 F.2d
352, 355 (5th Cir. 1993).  There is no support for Plaintiffs' argument that Mr.
Johnson's employer was required to pay any premium amount for Mrs. Johnson's
coverage as a dependent in order to constitute an ERISA plan.  Accordingly, the
Court finds that Plaintiffs' coverage was provided pursuant to an ERISA plan.

reviews the administrator's decision for mere abuse of discretion.  Schexnayder v. Hartford Life & Acc. Ins. Co., 600 F. 3d 465, 468 (5th Cir. 2010).  It is undisputed in this case that the Group Policy gives United Health the discretion to (1) "[i]nterpret [b]enefits and the other terms, limitations and exclusions set out" in the Group Policy, and (2) "[m]ake factual determinations relating to [b]enefits." (Dkt. # 15-1 at 77.)  Accordingly, the Court may reverse United Health's denial of benefits only if it abused its discretion.  Holland v. Int'l Paper Co. Retirement Plan, 576 F.3d 240, 246 (5th Cir. 2009).  When interpreting an ERISA plan, the Court gives "its language the ordinary and generally accepted meaning."  Koehler v. Aetna Health, Inc., 683 F.3d 182, 187 (5th Cir. 2012).

"A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." Holland, 576 F.3d at 246.  The Court will only find an abuse of discretion "where the plan administrator acted arbitrarily or capriciously."  Id.  "A decision is arbitrary only if it is made without a rational connection between the known facts and decision or between the found facts and the evidence."  Id.  The Court's review of the administrator's decision "need not be particularly complex or technical"; the Court must only ensure that the decision falls "somewhere on a continuum of reasonableness—even if on the low end."  Id. at 247.  The Court "owes no

deference, however, to an administrator's unsupported suspicions."  <u>Anderson v.</u>
<u>Cytec Indus.</u>, 619 F.3d 505, 512 (5th Cir. 2010).

>    1.    <u>United Health's Decision on Plaintiffs' Request for Additional</u>
>          <u>Benefits</u>

As stated above, the Certificate provides that United Health has the
discretion to (1) "[i]nterpret [b]enefits and the other terms, limitations and
exclusions set out" in the Group Policy, and (2) "[m]ake factual determinations
relating to [b]enefits."  (Dkt. # 15-1 at 77.)  According to the terms of the
Certificate, benefits with respect to "skilled nursing facility/inpatient rehabilitation
facility services" require preauthorization and are limited to "60 days per year."
(Dkt. # 15-1 at 143, 165.)  The Certificate further states that a participant should
"review all limits carefully, as [United Health] will not pay Benefits for any of the
services, treatments, items, or supplies that exceed these benefit limits."  (<u>Id.</u> at
99.)

On September 20, 2011, knowing that the Certificate limits for Mrs.
Johnson's care at the in-patient facility were near exhaustion, Plaintiffs had Dr.
Karen J. Kowalske, one of Mrs. Johnson's doctors, submit an appeal-letter to
United Health on her behalf.  (Dkt. # 14-1 at 8.)  Dr. Kowalske's appeal-letter
states that "[i]t is her professional opinion that Mrs. Johnson is not ready to
discharge at this time.  It is critical that she continue to receive Transitional Post-
Acute Rehabilitation services to further her potential for physical and cognitive

recovery." (Id.)  Dr. Kowalske requested approval for coverage for an additional six months.  (Id.)

On September 28, 2011, United Health denied the appeal on the basis that the services requested were not eligible for payment under the terms of the Certificate.  (Dkt. # 14-1 at 18.)  United Health then cited the applicable provisions of the Certificate, including the language quoted above, pertaining to its limitation that skilled nursing facility/in-patient rehabilitation services are limited to 60 days per year.  (Id. at 18–19.)  The letter states "[p]lease understand that federal law and state laws require [United Health] to strictly administer the terms of your health benefit plan.  We have no discretion to deviate from the terms of your [Certificate]." (Id.)  United Health further stated that "[o]ur decision does not reflect any view about the medical appropriateness of this service(s)."  (Id.)

The Court finds that United Health did not abuse its discretion in denying additional coverage beyond the Certificate's limits to Mrs. Johnson for her post-acute rehabilitation and skilled nursing services.  The Court must consider "the ordinary and generally accepted meaning" of the Certificate's language, which clearly states that such services were "[l]imited to 60 days per year."  See Koehler, 683 F.3d at 187.  Because the evidence indicates that United Health paid for Mrs. Johnson's in-patient care from July 1, 2011, until October 1, 2011, a time period spanning at least sixty days, there is substantial evidence supporting United

11

Health's decision to deny further coverage on the basis of the plain language of the Certificate.[3]

   2.   Denial of Benefits for Alternative Treatment or Comfort Expenses

   Plaintiffs also contend that they spent money on various items to assist with Mrs. Johnson's at-home rehabilitation, including: (1) purchasing a standing frame to aid her ability to stand; (2) installing hand rails throughout their home to assist in mobility; (3) paying a "sitter" to stay with Mrs. Johnson when Mr. Johnson was at work; (4) paying for neuro-feedback therapy and acupuncture; and (5) buying a "chi" machine. (Dkt. # 8 at 8–9.) Plaintiffs argue that United Health did not provide any reimbursement to them for the purchase of any of these items. (Id.)

   Plaintiffs have failed to submit any evidence that they attempted to seek reimbursement for these items and were subsequently denied coverage. Additionally, even if there was some evidence that they were denied coverage for these items, the language in the Certificate is clear that "Alternative Treatments,"

---

[3] Plaintiffs contend that a provision in the Affordable Care Act ("ACA"), 42 U.S.C. § 300gg-11(a), eliminated an insurance company's limitations on coverage in situations like Mrs. Johnson's in 2010, and therefore United Health's argument that it could not expand its coverage is "nonsense." (Dkt. # 16 at 16.) Plaintiffs, however, have provided no support for this assertion. Additionally, United Health has provided evidence that the provision cited by Plaintiffs was not effective until 2014, at least two years after United Health's denial of additional coverage for Mrs. Johnson. (See Dkt. # 17-1.)

including "[a]cupressure" are not covered.  (Dkt. # 15-1 at 99.)  The Certificate also limits items of "Personal Care, Comfort, or Convenience," including "[h]ome modifications such as . . . handrails."  (Id. at 104.)  In such case, Plaintiffs have failed to produce any evidence that United Health inappropriately denied coverage on this basis.

3.   Conflict of Interest

Plaintiffs further argue that United Health has a conflict of interest insofar as it was responsible for both paying benefits and determining Mrs. Johnson's eligibility for benefits.  (Dkt. # 16 at 16.)  The Court weighs an administrator's structural conflict of interests "as a factor in determining whether there is an abuse of discretion in the benefits denial . . . ."  Holland, 576 F.3d at 247.  A structural conflict of interests is "but one factor among many that a reviewing judge must take into account."  Id. at 248.  The emphasis which the Court places on the conflict will depend on the particular circumstances of the case.  Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 117 (2008).  The burden is on the claimant to produce evidence that the administrator's conflict of interests "influenced its benefits decision."  Anderson, 619 U.S. F.3d at 512; Holland, 576 F.3d at 249.  If a claimant fails to "present evidence of the degree of conflict, the court will generally find that any conflict is not a significant factor."  McDonald v. Hartford Life Grp. Ins. Co., 361 F. App'x 599, 608 (2012).

13

In this case, Plaintiffs have failed to present evidence of any alleged history of abuses of discretion by United Health, nor how its alleged structural conflict of interest may have affected its benefits decisions in this particular case. Instead, the record demonstrates that United Health made its decision based on the coverage limits explicitly stated in the language of the Certificate.  Accordingly, the Court finds that United Health's alleged structural conflict of interest was not a significant factor in its benefits decision.

### 4.    ERISA Equitable Estoppel

Plaintiffs also ask the Court to apply equitable estoppel under ERISA to their claims.  (Dkt. # 16 at 18.)  Plaintiffs argue that United Health employees made numerous "informal" and "material misrepresentations" to them regarding the Certificate's coverage and that they relied on the representations to their detriment.  (Id.)  Plaintiffs assert that United Health employees misinterpreted and misapplied their own policy provisions, ignoring the provisions which benefited Plaintiffs and selectively relied on the provisions which benefited United Health's "financial bottom line."  (Id.)

"To establish an ERISA-estoppel claim, the plaintiff must establish: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances."  Mello v. Sara Lee Corp., 431 F.3d 440, 444–45 (5th Cir. 2005).  A "misrepresentation is material if there is

14

a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision." High v. E-systems Inc., 459 F.3d 573, 579 (5th Cir. 2006). "A party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party." Id. at 580.

In this case, even assuming the United Health employees misrepresented a material aspect of the Certificate and that Plaintiffs relied on the representation to their detriment, the Court cannot find that such reliance was reasonable. As noted, the plain language of the Certificate provides the limits on coverage. Such information was provided to Plaintiffs and, therefore, it would not have been reasonable for them to rely on information to the contrary. See High, 459 F.3d at 580. Furthermore, the Certificate provides that "[n]o one has the authority to make any oral changes or amendments to the Policy." (Dkt. # 15-1 at 128.) Accordingly, the Court finds that Plaintiffs' ERISA-estoppel argument fails because they cannot establish all elements of the claim.

C.   Attorney's Fees

ERISA provides that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion, may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Court must determine whether the party is entitled to attorney's

15

fees by applying the five factors enumerated in <u>Iron Workers Local No. 272 v.</u>
<u>Bowen</u>, 624 F.2d 1255, 1266 (5th Cir. 1980).  The factors are: (1) the degree of the
opposing party's culpability or bad faith; (2) the ability of the opposing party to
satisfy an award of attorney's fees; (3) whether a fee award would deter other
persons acting under similar circumstances; (4) whether the party seeking fees
sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a
significant question regarding ERISA itself; and (5) the relative merits of the
parties' position.  <u>Bowen</u>, 624 F.2d at 1266.

    The Court declines to award attorney's fees in this case.  Under
<u>Bowen</u>, the Court finds that Plaintiffs did not bring this suit in bad faith, and it
does not appear that they would be able to satisfy an award of attorney's fees or
costs.  A fee award would not likely deter persons acting under similar
circumstances.  Additionally, United Health is not seeking to resolve a significant
question regarding ERISA.  Finally, the Court finds the merits of Plaintiffs' claims
to be legitimate.

II.  <u>Motion to Exclude</u>

    Plaintiffs filed a motion to exclude the supplemental index to United
Health's reply to its motion for summary judgment.  (Dkt. # 18.)  Plaintiffs argue
that the supplemental index introduces new evidence, the basis of which was not
discussed in United Health's underlying summary judgment motion.  (<u>Id.</u> at 2.)

Plaintiffs contend that in the alternative, they should be allowed an opportunity to file a surreply to address the new evidence.  (Id.)

In its reply, United Health attached, as evidence, a supplemental appendix containing materials printed from the Centers for Medicate and Medicaid Services ("CMS").  (Dkt. # 17-1.)  Plaintiffs argue both that the materials are hearsay and/or unauthenticated, and that presenting new evidence or argument in a reply is prohibited by applicable Fifth Circuit law.  (Dkt. # 18.)

Plaintiffs' contention is without merit.  First, district courts in this circuit have routinely held that materials printed off a government website are admissible under Rule 803(8) of the Federal Rules of Evidence.  See, e.g., Riverkeeper v. Taylor Energy Co., LLC, 113 F. Supp. 3d 870, 881 (E.D. La. July 7, 2015); Kew v. Bank of Am., N.A., No. H-11-2824, 2012 WL 1414978, at *3 n. 4 (S.D. Tex. Apr. 23, 2012).

Second, United Health's introduction of this evidence is in response to Plaintiff's contention, raised for their first time in their response, that the Affordable Care Act ("ACA"), specifically 42 U.S.C. §§ 300GG-11, 10822, alters the terms of the Certificate and abrogates the limitations on health benefits under the Certificate.  (See Dkt. 16 at 16.)  Plaintiffs' response argues that any limitations on coverage in the Certificate "had been eliminated by the [ACA] in 2010, before any of the three iterations of the Policy had ever been issued."  (Id.)  Because

17

Plaintiffs make this conclusive one-sentence argument, without any supporting evidence, United Health could respond in rebuttal by providing the terms of the ACA upon which Plaintiffs rely on in their response.  Accordingly, Plaintiffs' motion to exclude this evidence, and to alternatively offer a surreply, is denied.

CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** United Health's Motion for Summary Judgment (Dkt. # 15).  The motion is **GRANTED** as to all of Plaintiffs' claims and they are hereby **DISMISSED**.  The motion is **DENIED** with regard to any parties' request for attorney's fees and costs.  Additionally, the Court **DENIES** Plaintiffs' Motion to Exclude Defendant's Reply (Dkt. # 18).

**IT IS SO ORDERED.**

**DATED**: San Antonio, Texas, March 10, 2016.

_____

David Alan Ezra
Senior United States District Judge